**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

AUG 26 2025

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MICHAEL MASSEL, individually, and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

SUCCESSFULMATCH.COM, doing business as Millionaire Match,

Defendant - Appellant.

No. 24-1870

D.C. No.
5:23-cv-02389-PCP

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
P. Casey Pitts, District Judge, Presiding

Argued and Submitted August 13, 2025
San Francisco, California

Before: RAWLINSON and KOH, Circuit Judges, and FITZWATER, District Judge.[**]

Michael Massel (Massel) filed a putative class action alleging that

Successfulmatch.com (Millionaire Match), a dating service, unlawfully collected

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

and disclosed biometric information in violation of the Illinois Biometric Information Privacy Act.  Millionaire Match appeals the district court's order denying its motion to compel arbitration of Massel's claims.  Reviewing *de novo*, we reverse and remand to the district court to compel arbitration pursuant to the arbitration provision provided in Millionaire Match's Service Agreement.  *See Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (applying de novo review to a district court's decision on a motion to compel arbitration).

"Under an inquiry theory of notice, contracts are formed between website users and operators only where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Id.* at 709 (citations and internal quotation marks omitted).[1]  We first ask "whether the website provides reasonably conspicuous notice of the terms to which the consumer will be bound."  *Id.* (citation and internal quotation marks omitted).  "This test has two aspects:  the visual design of the webpages and the context of the transaction.  Both aspects should be considered together."  *Id.* (citations and internal quotation marks

---

[1]  "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."  *Id.* at 708 (citation omitted).  The parties agree that California law governs the issues before us.

omitted).  "[T]his inquiry is fact-intensive and is informed by the totality of the circumstances. . . ."  *Id.* (citation and internal quotation marks omitted).

Millionaire Match's webpage looked like this:

The district court erred in solely focusing on the color and design of the hyperlink in holding that Millionaire Match did not provide reasonably conspicuous notice of the agreement and its arbitration provision. *See Massel v. Successfulmatch.com*, 718 F. Supp. 3d 1112, 1120-21 (N.D. Cal. 2024). Contrary to the district court's approach, "there is no bright-line test for finding that a particular design element is adequate in every circumstance[,]" and "by the same logic, there are not per se rules about what's necessarily inadequate, either." *Godun*, 135 F.4th at 710 (citation and alteration omitted). "Such a one-size-fits-all approach . . . undermine[s] the fact-intensive, totality-of-the-circumstances nature of the analysis." *Id.*

Considering the totality of the circumstances, we conclude that Millionaire Match provided reasonably conspicuous notice of its Service Agreement. Although the hyperlinks to the Service Agreement and Privacy Policy were not in "a contrasting font color" and did not use "all capital letters," *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022), the webpage specified that the user "need[ed] to review and agree to the terms and conditions of both agreements and check the 'Agree' box," and, if the user declined, the user would "not be given access to the site." "That the links [to the Service Agreement and Privacy Policy were] not blue . . . or capitalized does not undercut" a conclusion that Millionaire Match provided "reasonably conspicuous notice" by using

uncluttered visuals, with only a single, unrelated phrase in bold, to tether account creation and use of the website to the user's review of, and consent to, the Service Agreement. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (citation omitted). The account creation screen was not "crowded" with extraneous visuals, and the requirements to review and agree to the Service Agreement were in "the natural flow of [the user's] actions." *Chabolla v. ClassPass Inc*., 129 F.4th 1147, 1157 (9th Cir. 2025) (citation omitted). Massel created an account with Millionaire Match, and shared his biometric information with this dating service. We assume that he, as "a reasonable internet user[,] [would be] more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship." *Godun*, 135 F.4th at 709.[2]

In sum, we conclude that the district court erred in denying Millionaire Match's motion to compel arbitration, because Massel was provided reasonably conspicuous notice of the Service Agreement, to which he assented by checking the box required for account creation and continued use of the website. *See id.* at 710 (explaining that the "internet contract formation test asks us to consider

---

[2] The End User Service Agreement stated in bold and capitalized terms that, by checking the "I AGREE" box, the user consented to the agreement's alternative dispute provisions. The agreement also provided that "if any dispute arises out of or in any way related to this Agreement and/or your use of the Service, any and all such disputes shall be resolved by submission to binding arbitration."

whether any action taken by the internet user—such as clicking a button or checking a box—unambiguously manifested his or her assent to proposed contractual terms") (citation, alteration, and internal quotation marks omitted).

**REVERSED and REMANDED.**